IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THADDEUS D. SMITH, SR., | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 15-00095-CG-C |
| | ) |
| MOBILE SHIPBUILDING & | ) |
| REPAIR, INC. and PARKER | ) |
| TOWING CO., | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. 23) filed by Thaddeus D. Smith, Sr. ("Plaintiff"), the Motion for Summary Judgment (Doc. 25) and Evidentiary Submission in Support (Doc. 26) filed by Mobile Shipbuilding & Repair, Inc. ("Mobile Shipbuilding") and Parker Towing Co. ("Parker Towing") (collectively, "Defendants"), and the parties' respective responses (Docs. 28, 30). For the reasons set forth herein, Plaintiff's motion for summary judgment is due to be **DENIED**, and Defendants' motion for summary judgment is due to be **GRANTED**.

## I. BACKGROUND

Plaintiff initiated this action pro se on February 19, 2015, and filed an amended complaint on March 6th. (Docs. 1, 4). Plaintiff's action consists of two claims: employment discrimination and retaliation prohibited by Title VII of the Civil Rights Act of 1964. (Doc. 4, pp. 1-2).

Plaintiff was employed with Marine Contracting Group, LLC. (Doc. 1, p. 2). Through this employment, Plaintiff was hired as a contract welder by Mobile Shipbuilding. Id. Plaintiff alleges that he was "a model employee" and was "offered fulltime employment with the company numerous times," which Plaintiff turned down because it would mean a decrease in pay. Id.

Plaintiff claims that he was forced to work in stormy weather and was told to "clock out and go home" when he "requested to go to the breakroom with the Caucasian workers." (Doc. 4, p. 3). He asserts that he was issued "defective tools for working" while new tools were issued to Caucasian workers. Id. Plaintiff alleges that the yard supervisor, Joe Ridderbjelke ("Ridderbjelke"), and the foreman, Shawn Jackson ("Jackson"), made several racist comments about African Americans, including President Barack Obama. (Doc. 1, p. 2; Doc. 4, p. 3). Plaintiff claims that Jackson called him "Ghetto Thad" and referred to other African Americans as "ghetto." (Doc. 4, p. 3). The manager, Stephen Waite ("Waite"), allegedly ignored his complaints about discrimination and instead terminated Plaintiff. Id.

Plaintiff filed a "Charge of Discrimination" with the United States Equal Employment Opportunity Commission ("EEOC") on November 18, 2014. Id. at 4. On his EEOC form, Plaintiff claimed, "I believe I was terminated because of my race (Black) and in retaliation for complaining of racial discrimination and unsafe working condition[s]." Id. Plaintiff stated that shipyard supervisors "complained about my work performance" on September 23, 2014. Id. On October 2, 2014,

Plaintiff allegedly "sent an email to the Human Resources Office, complaining of racial discrimination and unsafe working conditions." Id. The purported text of the email indicates that it was sent to Parker Towing. (Doc. 1, p. 5). Plaintiff claims he sent it to "a Mr. J. Ressler in the personal [sic] department of Parker Towing Co. Inc." because he "felt safer to send it to the parent company to avoid any retaliation." Id. at 4. The text also indicates that it was submitted anonymously. Id. at 6. In the email, Plaintiff largely complains of unsafe working conditions. Id. at 5-6. Only twice does the email mention race, once to claim that African Americans "along with the other races . . . have been run of[f] from their jobs," and again to state that Ridderbjelke "discriminate[s] with no reprimand." Id. at 6.

Ridderbjelke terminated Plaintiff on October 6, 2014. Id. at 3. Plaintiff admits that Waite told him that he was fired because his "performance as a fitter was not up to par and [his] ship fitting was taking too long and [his] fitting skills had not improved," but Plaintiff claims instead that he was terminated because of retaliation. Id. at 3-4. The EEOC issued a right-to-sue notice to Plaintiff on November 25, 2014. Id. at 7. Plaintiff subsequently filed this lawsuit against Mobile Shipbuilding and its parent company, Parker Towing.

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial

court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact. Id. at 256. In conducting its summary judgment analysis, a court must construe all evidence "in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

If the movant meets its burden, the burden shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Pro Se Litigants

The pro se litigant's road to trial is fraught with peril. Ever mindful of the difficulties that pro se litigants face, a trial court will hold pro se pleadings "to a less

stringent standard than pleadings drafted by attorneys." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). The Court will therefore "liberally construe" the pro se pleadings. <u>Fernandez v. United States</u>, 941 F.2d 1488, 1491 (11th Cir. 1991). Despite this leniency, pro se litigants must "conform to procedural rules." <u>Loren v. Sasser</u>, 309 F.3d 1296, 1304 (11th Cir. 2002). A pro se litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989). The Local Rules of this Court set out the following: "All persons proceeding <u>pro se</u> shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." Gen. Local R. 83.5(a). The Supreme Court has recognized that the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers," stating that the Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993). Pro se litigants proceed at their own risk.

### C. Title VII of the Civil Rights Act of 1964

#### 1. Agency Theory

Plaintiff sued both the employer for whom he worked as a contract worker, Mobile Shipbuilding, and the employer's parent company, Parker Towing. The legal basis for Plaintiff's claim against Parker Towing is unclear. Ostensibly, Plaintiff is suing Parker Towing based on a theory of agency. Defendants argue that "the two

entities are operationally distinct," with Mobile Shipbuilding making its operating decisions independent of Parker Towing, a lack of shared employees and headquarters, and "no centralized control of labor relations between the two companies." (Doc. 25, pp. 16-17). Defendants submit the affidavits of Parker Towing's chief financial officer (Doc. 26-9) and human resources manager (Doc. 26-7) to underscore and support their argument. Assuming agency does exist, Parker Towing's liability hinges on Mobile Shipbuilding's liability. Because the Court finds, infra, that Mobile Shipbuilding is due to be granted summary judgment on all claims, summary judgment must also be granted to Parker Towing. It is therefore unnecessary for the Court to conduct an agency analysis.

## 2. Definition of "Employer"

As a preliminary matter, an employer must employ a minimum number of people to be subject to the provisions of Title VII. For purposes of the Act, the term "employer" includes "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b) (2012). Establishing that the definition of "employer" has been met is an element of a Title VII claim. See Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). The Eleventh Circuit has recognized that "[c]onsistent with the purposes of the Act we interpret the term 'employer' liberally." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994). The Supreme Court has extolled the virtues of the "payroll method" in determining the number of employees

for Title VII purposes, stating that "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." See Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 206 (1997). The Supreme Court has also established that "current or preceding calendar year" means the calendar year that the Title VII discrimination or retaliation took place and the prior year. Id. at 204-05 (stating that "the 'current' and 'preceding' calendar years for purposes of the retaliatory-discharge claim are 1990 and 1989" when the plaintiff was fired in 1990).

In this case, it appears that all the alleged discriminatory events and the retaliatory discharge occurred in 2014. Thus, the relevant years are 2013 and 2014. Mobile Shipbuilding points to its payroll records for 2014 to show that it does not meet Title VII's definition of "employer." (Doc. 25, p. 16; Doc. 26-2, pp. 7-57). In his motion for summary judgment, Plaintiff argues that Mobile Shipbuilding's purported website proves that the company is a Title VII employer since it states, "Current estimates show this company . . . employs a staff of approximately 10 to 19." (Doc. 23, pp. 4, 9). Defendants counter that Plaintiff cites to a third-party's website, not Mobile Shipbuilding's website. (Doc. 28, p. 3).

An analysis of the aforementioned payroll records shows that Mobile Shipbuilding employed fifteen or more people for seven weeks in 2014. (Doc. 26-2, pp. 7-57). Furthermore, it appears that the copy of the website submitted by Plaintiff shows on its face that it is the website of a third party, Manta Media Inc. (Doc. 23, p. 9). Even if it were Mobile Shipbuilding's website, "employ[ing] a staff of

approximately 10 to 19" does not contradict Mobile Shipbuilding's assertion that it employed less than fifteen people for the majority of 2014, as half of the scale of "10 to 19" is less than fifteen.

While the Court finds the evidence submitted by Defendants persuasive, the Court also recognizes that the evidence is incomplete. If the Court were to base the determination of whether Mobile Shipbuilding is a Title VII employer on only 2014, then Title VII would not apply. However, the Court must also consider 2013, the calendar year preceding the year in which the alleged discrimination and retaliatory discharge took place. Defendants submitted no evidence that shows Mobile Shipbuilding failed to meet Title VII's definition of employer in 2013. Therefore, the Court cannot grant summary judgment to Defendants on this issue.

Because the Court cannot determine whether the employee numerosity requirement has been met by Mobile Shipbuilding alone and therefore cannot grant summary judgment based on this element, there is no need for the Court to determine whether Mobile Shipbuilding and Parker Towing should be combined for purposes of the employee numerosity requirement.

### 3. Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (2012). A plaintiff may show Title VII

discrimination by presenting direct or circumstantial evidence. See Flowers v. Troup Cnty., Ga., Sch. Dist., 803 F.3d 1327, 1335 (11th Cir. 2015). Direct evidence is that "which, if believed, would prove the existence of a fact without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).

If the evidence is circumstantial, a court must use the guidelines set out in two Supreme Court cases, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). The Eleventh Circuit has recognized that, "[u]nder the well-trod McDonnell Douglas framework, a plaintiff first must make out a prima facie case of discrimination that 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" Flowers, 803 F.3d at 1336 (quoting Burdine, 450 U.S. at 254). For a prima facie showing of discrimination, a claimant must demonstrate "(1) that he is a member of a protected racial class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." Id. If the claimant meets this burden, "a presumption that the employer discriminated against the plaintiff" is created, and the employer must "produce 'a legitimate, nondiscriminatory reason' for the action taken against the plaintiff." Id. (quoting Burdine, 450 U.S. at 254). Should the defendant employer succeed, "the plaintiff's prima facie case is rebutted and all presumptions drop from the case," with the parties now possessing the opportunity "to litigate whether the employer's proffered reason for its action is

pretext." Id.

Plaintiff alleges in his amended complaint that he "was forced to work in the rain & lightening [sic]" and was told to go home when he protested on October 3, 2014, while Caucasian workers relaxed in the break room. (Doc. 4, p. 3). Plaintiff asserts that he was issued "defective tools" while Caucasian workers were issued "new tools." Id. Plaintiff claims that Jackson referred to Plaintiff and other African Americans as "ghetto." Id. Plaintiff's complaint accuses Ridderbjelke and Jackson of "racial comments about African Americans including the President Obama" and other treatment "that was unfair and demeaning in comparison to the Caucasian workers." (Doc. 1, p. 2). In addition, Plaintiff makes accusations of hazardous work conditions in the complaint and amended complaint, but those are irrelevant to the Title VII claims. Defendants dispute all of these assertions.

Plaintiff has not presented any direct evidence of discrimination in his motion for summary judgment or the response to Defendants' motion for summary judgment. Indeed, he has not presented any evidence relevant to his claims at all. Plaintiff does not cite to any materials in the record in his motion for summary judgment. Instead, he makes bald allegations that Defendants have not successfully defended against any of his claims. While Plaintiff's complaint could be treated as an affidavit if it were verified pursuant to 28 U.S.C. § 1746, Plaintiff's complaint has not been verified. See Howard v. Memnon, 572 F. App'x 692, 694 (11th Cir. 2014) (unpublished). Rule 56(c) requires Plaintiff to support his motion by "citing to particular parts of materials in the record" or by "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The most that can be said about Plaintiff's motion is that he attempts to show "that an adverse party cannot produce admissible evidence to support the fact." However, as discussed below, Defendants provide sufficient evidence for the Court to grant summary judgment in their favor on this claim. Therefore, Plaintiff's motion for summary judgment on the Title VII discrimination claim must be denied.

While Plaintiff's claims of discrimination are nothing more than allegations and are unsupported by any evidence, Defendants do present evidence in their motion for summary judgment that contradicts Plaintiff's claims. Defendants concede that Plaintiff "is in a protected class and that termination is an adverse employment action." (Doc. 25, p. 8). Defendants do not address whether Plaintiff was qualified for the position, although presumably he was qualified since he worked there for several years. Defendants argue that Plaintiff's claim fails due to the remaining element, which requires proof that "a similarly situated person outside of his protected class" was treated more favorably. Id.

Due to its importance to the survival of Plaintiff's retaliation claim, as discussed below, the Court must first determine whether Plaintiff has suffered an "adverse employment action" other than his termination. For a Title VII discrimination claim, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001). The employee must suffer an employment

action that is "materially adverse as viewed by a reasonable person in the circumstances." Id. Other than his termination, the only actions that could be even remotely viewed as adverse are Plaintiff's allegations of being forced to work with defective tools and in a storm while Caucasian workers relaxed in a break room. Defendants have presented evidence to counter the latter but not the former. Taken as true, being forced to work with defective tools, without more, does not rise to the level of "adverse employment action." As for the storm, Waite stated in an affidavit that all employees, other than one African American employee other than Plaintiff, worked a full day on the day Plaintiff claims he was forced to work in the storm alone. (Doc. 26-2, p. 4-5). The time sheet for those employees supports Waite's statement. Id. at 70. Neither of these claims rise to such a level that they can be said to constitute a "serious and material change" in Plaintiff's employment. Thus, Plaintiff must rely on his termination to meet the "adverse employment action" element.

Waite stated in his affidavit that he replaced Plaintiff with an African American man. (Doc. 26-2, p. 5). Ridderbjelke, who fired Plaintiff, swore in his affidavit that he did not fire Plaintiff because of his race but rather for shoddy work. (Doc. 26-4, pp. 2-3). Waite stated that, upon viewing photographs of Plaintiff's work, he agreed the work was "unacceptable." (Doc. 26-2, p. 4). Despite Plaintiff's allegation of derogatory comments about African Americans and President Obama, Ridderbjelke testified in his affidavit that he "never said a racial slur" to Plaintiff or "anything racial about President Barack Obama." (Doc. 26-4, p. 3). Neither party

has produced evidence regarding the alleged "ghetto" comments by Jackson. In any event, there is no indication that Jackson played a part in the decision to fire Plaintiff. Plaintiff has not presented any evidence to show "that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." See Flowers, 803 F.3d at 1336.

Plaintiff only accuses Defendants of discrimination and offers no supporting evidence, while Defendants present evidence negating the existence of Title VII discrimination. Therefore, the Court finds that Defendants' motion for summary judgment is due to be granted on this claim.

### 4. Retaliation

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (2012). Like the Title VII discrimination claim, a Title VII retaliation claim grounded on circumstantial evidence will be analyzed under the McDonnell Douglas framework. A plaintiff must set out a prima facie case of retaliation by showing "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir.

2008).

Plaintiff has not presented <u>any</u> evidence relevant to this claim in his motion for summary judgment or his response to Defendants' motion for summary judgment, while Defendants have properly supported their motion for summary judgment. Plaintiff has therefore not complied with Rule 56, and his motion for summary judgment must be denied.

Defendants concede that Plaintiff has suffered an adverse employment action via his termination. (Doc. 25, p. 12). However, Defendants dispute the existence of statutorily protected activity and a causal connection between the activity and the adverse employment action. <u>Id.</u> Initially, Defendants cite to a recent Supreme Court case for the proposition that Plaintiff has failed to show causation. <u>Id.</u> at 11. The Supreme Court has held that retaliation claims under Title VII "require proof that the desire to retaliate was the but-for cause of the challenged employment action." <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2528 (2013). Defendants go on to state, "Smith pleads that the termination decision was motivated by race discrimination and retaliation, which he cannot do. The days of 'mixed motive' are over." (Doc. 25, p. 12).

The Court found above that the only adverse employment action suffered by Plaintiff pursuant to his discrimination claim was his termination. Thus, if Plaintiff pleads discrimination resulted in his termination, he cannot also plead that retaliation resulted in his termination. Only one of these claims can move forward based on Plaintiff's termination. Despite the apparent presence of mixed motive,

14

which would support the Court's denial of Plaintiff's motion for summary judgment and grant of Defendants' motion, the Court will analyze Plaintiff's retaliation claim without regard to the discrimination claim in order to "liberally construe" Plaintiff's motion.

Plaintiff states that he reported to Waite treatment by Ridderbjelke and Jackson "that was unfair and demeaning in comparison to the Caucasian workers." (Doc. 1, p. 2). Plaintiff maintains that "Waite . . . simply ignored the seriousness of the complaints and terminated my job." (Doc. 4, p. 3). Plaintiff also alleges that he anonymously emailed a letter to "Mr. J. Ressler" of Parker Towing, a copy of which was attached to the complaint. (Doc. 1, pp. 4-6). Plaintiff claims that he called Ressler and complained of "hazardous conditions and discrimination." Id. at 4.

Complaining of race discrimination is a protected activity under Title VII. However, evidence submitted by Defendants contradicts Plaintiff's allegations. Ridderbjelke, who terminated Plaintiff, swore in his affidavit, "[Plaintiff] never once complained of racial discrimination or retaliation to me. I did not know about any complaint of race discrimination or retaliation by Smith to anyone until I learned he filed a lawsuit." (Doc. 26-4, p. 3). Ridderbjelke further asserted that he fired Plaintiff for subpar work. Id. at 2. Although Waite admits in his affidavit that Plaintiff complained to him of harassment by Ridderbjelke, he maintains that Plaintiff "never once mentioned race discrimination or even the issue of race in these conversations or at any time." (Doc. 26-2, p. 3). Waite also testifies that he did not learn of Plaintiff's complaints to Parker Towing until after Ridderbjelke had

fired Plaintiff. Id. at 3-4. Ronald Jesser (similar to "J. Ressler") of Parker Towing stated in an affidavit that he received an anonymous phone call regarding "an issue at Mobile Shipbuilding" and that "the caller stated that he would be sending an email to explain the details." (Doc. 26-7, p. 2). However, Jesser never received the email, and he did not inform anyone at Mobile Shipbuilding about the phone call. Id. Further, the only mention of race in the anonymous letter is a sentence that states, "There is racial tension on the job with the blacks as there have been along with the other races that have been run of[f] from their jobs." (Doc. 1, p. 6). This general allegation does not even appear to show discrimination, as the plain language reads that all races were treated the same. The letter also alleges that Ridderbjelke "discriminate[s] with no reprimand." Id. This is another general allegation, and it is unclear whether Plaintiff is referring to the "racial tension" mentioned earlier in the letter or some other event. Defendants have offered proof that Plaintiff did not engage in protected activity. Further, Defendants have presented evidence that those involved in Plaintiff's termination did not learn of any complaints of discrimination until after the decision had been made, negating causation.

Plaintiff has made only allegations of retaliation, while Defendants have offered evidence countering Plaintiff's claims. Thus, Defendants' motion for summary judgment is due to be granted.

### D. Alleged Discovery Violations

In his response to Defendants' motion for summary judgment, Plaintiff

complains of alleged discovery violations committed by Defendants. (Doc. 30, pp. 1-2). Plaintiff argues that he was not provided with the "personnel files" that Defendants use to bolster their motion for summary judgment. Id. at 1. Plaintiff also claims that Defendants' attorney lied to the Court when she stated on record that Defendants had no personnel records related to Plaintiff. Id.

After listening to the recording of the hearing to which Plaintiff is referring, it is clear that Defendants' attorney did in fact state that Defendants had no personnel records related to Plaintiff. (Doc. 20). However, Defendants' attorney clarified her comment by stating that all records Defendants possessed on Plaintiff had been provided to Plaintiff. Id. Indeed, Defendants' response to Plaintiff's request for production of documents shows that Defendants had in fact provided Plaintiff with the documents. (Doc. 26-10, p. 2). For example, the response refers to "personnel records" labeled "Smith vs. MSR & PTC 000020-226." Id. This reference corresponds with the labels on the records submitted to the Court in support of Defendants' motion for summary judgment. (Doc. 26-1, pp. 2-5; Doc. 26-2, p. 72; Doc. 26-3, pp. 2-5). Plaintiff's argument is without merit.

## CONCLUSION

Defendants' motion for summary judgment is hereby **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.

**DONE** and **ORDERED** this 10th day of December, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE