[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10321
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00095-CG-C

THADDEUS D. SMITH, SR.,

    Plaintiff-Appellant,

versus

MOBILE SHIPBUILDING & REPAIR, INC.,
PARKING TOWING COMPANY, INC.,

    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(October 4, 2016)

Before WILLIAM PRYOR, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

In this *pro se* employment discrimination and retaliation case, filed under Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3, Plaintiff-Appellant Thaddeus D. Smith Sr. alleged that Defendants-Appellees Mobile Shipbuilding & Repair, Inc. ("Mobile Shipbuilding"), and Parker Towing Company, Inc. ("Parker Towing"), (collectively, "Defendants") terminated his employment because of his race (African-American) and because he complained of racial discrimination. The district court granted summary judgment to Defendants. After careful review, we affirm.

### I.

Smith worked as a welder/fitter[1] on contract with Mobile Shipbuilding, which is in the business of fabrication of structural metal and ship repair. Parker Towing was Mobile Shipbuilding's parent company. In his initial complaint and a supplemental filing, Smith alleged that over four-and-a-half years of employment, he was subjected to unfair, demeaning, and harsh treatment by two white employees—Joe Ridderbjelke, a yard supervisor, and Shawn Jackson, a foreman—because of his race.

Smith alleged that, on October 3, 2014, he was forced to work in the rain and lightning and was told to go home when he protested, while white employees were permitted to go to the breakroom. He also alleged that he was issued

---

[1] According to an affidavit filed in this case, the work of a "fitter" involved positioning plates on a barge or ship for readiness for welding.

defective tools while white employees were provided with new ones. In addition, according to Smith, Jackson referred to him as "ghetto Thad" and used the term "ghetto" to refer to African-Americans generally. Smith alleged that he complained several times about the racially discriminatory treatment, but the manager, Stephen Waite, who is white, ignored his complaints. Smith also sent an anonymous letter to Parker Towing complaining of racial discrimination by Ridderbjelke a few days before he was fired on October 6, 2014.

After Defendants answered the complaint, Smith filed a motion for appointment of counsel and later moved for summary judgment. Following a scheduling conference, a magistrate judge denied Smith appointed counsel and told him that he could move for summary judgment once discovery closed. At the close of discovery, Smith refiled his motion for summary judgment, asserting that Defendants had failed to rebut any of the allegations in his complaint. Smith argued for the first time that Defendants had violated the Fair Labor Standards Act ("FLSA") by failing to keep employment records for him. He also attached documents relating to his communications with the Equal Employment Opportunity Commission ("EEOC") about the investigation of his complaint of discrimination and retaliation.

Defendants moved for summary judgment on October 1, 2015. They argued that Smith could not establish a *prima facie* case of either discrimination or

retaliation under Title VII, and that, even if he could, he could not show that the legitimate, non-discriminatory reason for firing him—substandard job performance—was actually a pretext for discrimination. In support of their motion, Defendants submitted affidavits from Ridderbjelke and Waite, among other materials.

According to Waite's affidavit, in the months prior to Smith's termination, Ridderbjelke complained to Waite about Smith's poor work and sent him photographs of the poor workmanship. During the same period of time, Smith twice complained to Waite that Ridderbjelke was "riding him and harassing him," but Smith never mentioned racial discrimination or race generally. Regarding Smith allegedly having been forced to go home on October 3, 2014, Waite stated that time records showed that the majority of employees, including Smith, worked a full day that date. Waite further stated that, on October 6, 2014, Waite received a call from Ridderbjelke, who explained that he had released Smith from work, but Smith was refusing to leave. Waite told Smith that he supported Ridderbjelke's decision. During that conversation, Waite learned for the first time that Smith had complained to Parker Towing, but Waite did not know the substance of the complaint until this lawsuit was filed. Waite also stated that Smith's position was filled by an African-American man.

In his affidavit, Ridderbjelke stated that "[s]ometime in 2014" he noticed that Smith's work performance had deteriorated, and he told Waite about it and sent him pictures of the poor work. On October 6, 2014, while Smith was working as a fitter, Ridderbjelke observed that Smith's work was bad and told him so. When Smith responded that it was the best he could do, Ridderbjelke told him that if that was the best he could do then he was released from work. Ridderbjelke sent a photograph of the work to Waite. Ridderbjelke also stated that he had "never said a racial slur" to Smith or "anything racial about President Barack Obama," though he had said that "Obama is a sorry President." Finally, Ridderbjelke stated that Smith had not complained about discrimination to him.

In an order issued on October 9, 2015, the district court stated that Smith's response in opposition to Defendants' motion for summary judgment was due October 20, 2015. Further, the court advised that the grant of Defendants' motion would represent a final adjudication on the matters raised in the motion, and that "[a]ny party opposing the motion has the right to file sworn affidavits, documentary evidence, other material opposing the motion, and a brief containing any legal arguments contrary to those presented by the party who filed the motion." The order listed conditions for affidavits to be considered as evidence. It warned that "[i]t is important to note that, except in certain circumstances, a person against whom a motion for summary judgment is filed may not rely on the

allegations of his pleadings." *Id.* Finally, the order provided guidance for a party unable to secure affidavits to oppose the motion.

On October 20, 2015, the deadline set in the court's order, Smith filed a response in opposition to Defendants' motion for summary judgment. Smith stated that Defendants had failed to rebut the charges against them, had lied to the court about not having personnel files for him, and had submitted irrelevant information. Smith stated that he stood by the arguments made in his motion for summary judgment. He did not attach any evidentiary materials to his response or cite to any materials in the record in support of his claims.

The district court granted summary judgment to Defendants. The court first noted that Smith had not presented any evidence in support of his claims. Smith's complaints, the court stated, could not be treated as affidavits for purposes of summary judgment because they were not verified as provided in 28 U.S.C. § 1746. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (stating that specific facts in a <u>sworn</u> *pro se* pleading must be considered at summary judgment). By contrast, the court explained, Defendants had produced sufficient evidence to show that summary judgment was warranted.

As for Smith's discrimination claim, the district court found that Smith had not shown that he was treated worse than a similarly situated person outside of his protected class. Defendants produced evidence that Smith was replaced by an

African-American man and that Smith was fired for substandard work, but Smith offered no evidence to support his allegations of discrimination or rebut Defendants' evidence. As for the retaliation claim, the court found that Defendants produced evidence showing that Waite and Ridderbjelke did not know of Smith's complaints of racial discrimination—as opposed to general complaints about workplace harassment—before his termination, so Smith could not establish the existence of a causal connection between his complaints and his termination. Consequently, the district court granted summary judgment to Defendants. Smith now appeals.

## II.

We review a grant of summary judgment *de novo*, construing the record and drawing all reasonable inferences in favor of the non-moving party. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if a reasonable jury could return a verdict in favor of the non-moving party. *Kernel Records,* 694 F.3d at 1300. We liberally construe the filings of *pro se* litigants. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

The party moving for summary judgment bears the initial burden of demonstrating, by reference to materials on record, the absence of a genuine dispute of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); Fed. R. Civ. P. 56(c)(1). If that burden is met, the non-moving party generally "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Thus, in response to a summary-judgment motion, a plaintiff cannot rely on factual allegations set forth in the complaint, "but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992) (citation and internal quotation marks omitted).

Our review of the record indicates that Defendants discharged their burden in moving for summary judgment. Smith is incorrect that Defendants needed to produce evidence to rebut Smith's allegations at any time before moving for summary judgment. Once Defendants' summary-judgment motion was filed, it fell to Smith to show "by affidavit or other evidence specific facts" sufficient to create a genuine issue for trial. *See Lujan*, 504 U.S. at 561, 112 S. Ct. at 2137. He did not do so. Although factual allegations in a *pro se* plaintiff's complaint must be considered at summary judgment where the complaint is verified as provided in

18 U.S.C. § 1746, *see Caldwell*, 748 F.3d at 1098, Smith's complaints were not verified and therefore did not qualify for consideration at summary judgment. On that basis, we conclude that the district court's summary-judgment ruling was correct. In any case, we find that summary judgment was appropriate even if Smith's allegations are taken into account. We explain both of these conclusions in more detail below.

### A.

We note at the outset, though Smith does not raise the issue on appeal, that the district court provided Smith adequate notice of his need to file affidavits or other evidentiary materials in response to the defendant's motion for summary judgment. "We have repeatedly emphasized that care must be exercised to ensure proper notice to a litigant not represented by counsel." *United States v. One Colt Python*, 845 F.2d 287, 289 (11th Cir. 1988). Because *pro se* litigants lack formal legal training, district courts must give "clear notice of the need to file affidavits or other responsive materials" in response to a motion for summary judgment. *Id.* Notice also must be given "of the consequences of default." *Id.*

Here, the district court complied with these requirements. In its order notifying Smith of Defendants' summary-judgment motion and the deadline to file his response, the district court stated Smith had "the right to file sworn affidavits, documentary evidence, other material opposing the motion," and warned that it

9

was "important to note that, except in certain circumstances, a person against whom a motion for summary judgment is filed may not rely on the allegations of his pleadings." We conclude that the court's order gave "clear notice of the need to file affidavits or other responsive materials" and "of the consequences of default." *See One Colt Python*, 845 F.2d at 289.

**B.**

We now address the merits of Smith's claims. Title VII prohibits employment discrimination on the basis of race, among other protected grounds. 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against an employee because the employee "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a).

In most cases, as here, a plaintiff will not have direct evidence of racial discrimination or retaliation, but rather only circumstantial evidence that he or she contends supports an inference of discrimination or retaliation. For these circumstantial-evidence cases, we generally employ the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), though it is not the only way to prove discrimination or retaliation. *See Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1335–36 (11th Cir. 2015), *cert. denied*,

136 S. Ct. 2510 (2016) (discrimination); *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009) (retaliation).[2]

This framework requires the plaintiff first to establish a *prima facie* case of discrimination or retaliation, which creates a presumption that the employer unlawfully discriminated or retaliated against the plaintiff. *Flowers*, 803 F.3d at 1336; *Bryant*, 575 F.3d at 1307. To eliminate the presumption, the employer must produce a legitimate, non-discriminatory reason for the challenged employment action. *Id.* Once the employer does so, the presumption drops out, and the plaintiff then has the opportunity to show that the employer's proffered reason is pretextual, which merges with the plaintiff's ultimate burden of showing intentional discrimination or retaliation. *Id.*

In discrimination cases, a plaintiff makes out a *prima facie* case by showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class. *Flowers*, 803 F.3d at 1336. In order to establish a *prima facie* case of retaliation, a plaintiff may show that (1) he engaged in a statutorily protected activity; (2) he suffered a materially

---

[2] *Bryant* addressed a retaliation claim under 42 U.S.C. § 1981, not Title VII, but Title VII and § 1981 require the same proof and use the same framework. *Bryant*, 575 F.3d at 1307.

adverse action; and (3) he established a causal link between the protected activity and the adverse action. *Bryant*, 575 F.3d at 1307–08.

Here, the district court properly found that Smith did not establish a *prima facie* case of discrimination. Defendants produced evidence that Smith was replaced by someone within his protected class (an African-American male), and Smith did not attempt to identify any specific similarly situated employee outside of his protected class before the district court and has not done so on appeal. Thus, Smith failed to show that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class. *See Flowers*, 803 F.3d at 1336. Accordingly, the district court did not err in granting summary judgment on this claim.

The district court also properly concluded that Smith did not establish a *prima facie* case of retaliation. In order to show a causal connection between protected activity and an adverse action, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Here, Defendants produced evidence that neither of the two decision makers, Ridderbjelke and Waite, knew that Smith had complained of racial discrimination before the decision to terminate his employment on October

6, 2014. And "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Id.*

While Waite's affidavit reflects that Smith had previously complained about Ridderbjelke "riding him and harassing him," there is no evidence (leaving aside Smith's allegations for the moment) that Smith attributed Ridderbjelke's harassing conduct to his race, such that Waite would have been on notice that Smith had complained of racial discrimination, in violation of Title VII, instead of general unfair treatment in the workplace, which is not protected by Title VII. *See, e.g.*, *Flowers*, 803 F.3d at 1338 ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges."). Because Smith did not show a causal connection between his complaints and his termination, the district court did not err in granting summary judgment on his retaliation claim.

Moreover, even assuming that Smith established a *prima facie* case of discrimination or retaliation, Defendants proffered evidence showing that they terminated Smith's employment because of poor work performance, not race or retaliation. Specifically, Ridderbjelke claimed that Smith's work performance had declined in the months leading up to his termination on October 6, 2014, when Ridderbjelke again observed Smith doing poor work.

While Smith's allegations, assuming they constitute evidence, suggest that Ridderbjelke may have harbored some racial animus, the allegations do not present any specific facts which cast doubt on Defendants' proffered reason for Smith's termination. For example, his allegations do not indicate when, during his four-and-a-half years of employment, the discriminatory comments were allegedly made or in what context they were made, nor do they indicate when or how often Smith received inadequate tools compared to white employees. Because Smith's allegations are largely vague and conclusory, they fail to directly rebut with specific facts Defendants' evidence that job performance was the real reason for Smith's termination. *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007) (noting that "evidence of a discriminatory animus" alone will generally not be sufficient to show pretext "without rebutting each of the proffered reasons of the employer"). Smith's assertion that Defendants provided conflicting reasons for his termination is not borne out by any evidence in the record. In sum, Smith's allegations are insufficient to create a genuine dispute about whether job performance was merely a pretext for his termination.

## III.

Smith presents a few other issues on appeal that were not properly developed in the district court or were raised for the first time in his reply brief. First, he argues that Defendants failed to provide various pieces of information he

requested during discovery. However, the only discovery issue he raised to the district court concerned his personnel records, and the court determined that Smith received the requested information. Smith does not explain why that conclusion was in error, and we decline to address the remaining discovery demands because they were not presented to the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (stating that we generally do not consider issues raised for the first time on appeal).

Second, Smith charges that Defendants violated the FLSA, but no FLSA claim was raised in his complaints, and plaintiffs cannot raise new claims through arguments at summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004).

Finally, to the extent that Smith claims that Defendants violated Alabama state law in various ways, he raised these issues for the first time in his reply brief, so we will not consider them. *See Timson*, 518 F.3d at 874 ("[W]e do not address arguments raised for the first time in a *pro se* litigant's reply brief.").

## IV.

For the reasons stated, we **AFFIRM** the grant of summary judgment in favor of Defendants Mobile Shipbuilding and Parker Towing, and the denial of summary judgment to Smith, on Smith's Title VII claims for discrimination and retaliation.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 04, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 16-10321-FF
Case Style: Thaddeus Smith, Sr. v. Mobile Shipbuilding & Repair,, et al
District Court Docket No: 1:15-cv-00095-CG-C

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion